O

FILED
CLERK, U.S. DISTRICT COURT

January 21, 2015

CENTRAL DISTRICT OF CALIFORNIA
BY: ___KH___ DEPUTY

I HEREBY CERTIFY THAT THIS DOCUMENT WAS SERVED BY FIRST CLASS MAIL, POSTAGE PREPAID, TO (SEE BELOW) AT THEIR RESPECTIVE MOST RECENT ADDRESS OF RECORD IN THIS ACTION ON THIS DATE

TO:            DATE:    DEPUTY CLERK:
Petitioner     1/21/15  klh

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIE BROWN, | ) Case No. EDCV 14-1864 RNB |
| Petitioner, | ) |
| vs. | ) MEMORANDUM OPINION AND ) ORDER |
| AMY MILLER, Warden, | ) |
| Respondent. | ) |

On September 2, 2014,[1] petitioner constructively filed a Petition for Writ of Habeas Corpus by a Person in State Custody ("Pet.") herein. The Petition purported to be directed to a conviction sustained by petitioner in San Bernardino County Superior Court on October 13, 2004, following petitioner's guilty plea to three counts of elder abuse in violation of Cal. Penal Code § 368(b)(1) and his admission of special allegations that the abuse had caused death for one of the counts and great bodily injury for the other two. The Petition alleged (1) that the guilty plea was involuntary and unintelligent because petitioner was not advised during the plea

---

[1] September 2, 2014 is the proof of service date on the Petition. The Ninth Circuit has held that the prison mailbox rule applies to a habeas petitioner's state and federal filings. See, e.g., Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001).

colloquy that, in order to be guilty of the elder abuse charges, he "had to have an existing legal duty to act, care or control which petitioner did not have"; and (2) that his guilty plea was the product of ineffective assistance of counsel in that trial counsel failed to research the law or investigate the facts of the case and failed to advise petitioner of the essential elements of the elder abuse offense prior to advising petitioner to plead guilty.

Now pending before the Court and ready for decision is respondent's Motion to Dismiss on the ground that the Petition is time barred under 28 U.S.C. § 2244(d). Petitioner failed to file opposition to the Motion to Dismiss within the allotted time or request an extension of time to do so. For the reasons discussed hereafter, the Motion to Dismiss is granted and this action is dismissed with prejudice.

## BACKGROUND

On October 13, 2004, the trial court sentenced petitioner in accordance with the terms of the negotiated plea bargain agreement to 18 years in state prison. Petitioner did not appeal from his conviction or sentence.

Petitioner's first collateral challenge took the form of a petition for writ of habeas corpus constructively filed in San Bernardino County Superior Court on or about June 14, 2013 (signature date). The claims raised in that petition generally corresponded to the two grounds for relief being alleged in the Petition herein and included the same claim also being made in the Petition herein that petitioner is actually innocent of the elder abuse charges (as well as the same supporting declarations from petitioner and his daughter). In an Order filed on August 29, 2013, the Superior Court denied the petition on the procedural ground that petitioner had substantially delayed seeking habeas relief and had not established good cause or justification for his delay. In its Order, the Superior Court also found that petitioner had not met his burden of establishing his actual innocence.

//

1    Next, petitioner constructively filed a habeas petition in the California Court
2 of Appeal on October 22, 2013, in which he challenged the Superior Court's denial
3 of his habeas petition and reasserted his actual innocence claim. That petition was
4 summarily denied without comment or citation to authority on November 6, 2013.

5    Petitioner constructively filed a Petition for Review of the Court of Appeal
6 decision on November 13, 2013 (proof of service date). The California Supreme
7 Court summarily denied that petition without comment or citation to authority on
8 January 15, 2014.

9    The constructive filing of the Petition herein followed over seven months later
10 on September 2, 2014.

## DISCUSSION

Since the Petition was filed after the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") on April 24, 1996, it is subject to the AEDPA's one-year limitation period, as set forth at 28 U.S.C. § 2244(d). See Calderon v. United States District Court for the Central District of California (Beeler), 128 F.3d 1283, 1287 n.3 (9th Cir. 1997), cert. denied, 522 U.S. 1099 and 523 U.S. 1061 (1998).[2] 28 U.S.C. § 2244(d) provides:

> "(1)   A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
>     (A)   the date on which the judgment became final by conclusion of direct review or the expiration of the time for

---

[2]   Beeler was overruled on other grounds in Calderon v. United States District Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998) (en banc), cert. denied, 526 U.S. 1060 (1999).

seeking such review;

(B)   the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C)   the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)   the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

**A.   Unless a basis for tolling the statute existed, petitioner's last day to file his federal habeas petition was December 12, 2005.**

Under California law in effect at the time of petitioner's conviction, an appeal had to be filed within 60 days after the rendition of the judgment. See Cal. Rules of Court, former Rule 31(a). Where the judgment of conviction was entered upon a guilty plea, the defendant was required to file a notice of intended appeal within the 60-day period, accompanied by a statement "showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings"; the appeal did not become operative unless and until the trial court executed and filed a certificate of probable cause for appeal. See Cal. Rules of Court, former Rule 31(d); see also Cal. Penal Code § 1275. Consequently, "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review" here was December 12, 2004, when petitioner's time to file an intended notice of appeal expired.

//

1    Petitioner has made no contention that he was impeded from filing his federal
2 petition by unconstitutional state action and thereby entitled to a later trigger date
3 under § 2244(d)(1)(B). Moreover, petitioner has no basis for contending that he is
4 entitled to a later trigger date under § 2244(d)(1)(C) with respect to either of his
5 claims because the claim is based on a federal constitutional right that was initially
6 recognized by the United States Supreme Court subsequent to the date his conviction
7 became final and that has been made retroactively applicable to cases on collateral
8 review. Finally, for purposes of § 2244(d)(1)(D), the statute of limitations begins to
9 run when a prisoner "knows (or through diligence could discover) the important facts,
10 not when the prisoner recognizes their legal significance." See Hasan v. Galaza, 254
11 F.3d 1150, 1154 n.3 (9th Cir. 2001). Here, neither of petitioner's claims purports to
12 be based on facts of which petitioner was unaware or which could not have been
13 discovered through the exercise of due diligence prior to December 12, 2004, the date
14 his judgment of conviction became final. Accordingly, petitioner has no basis for
15 contending that he is entitled to a later trigger date under § 2244(d)(1)(D).

16    The Court therefore finds that, unless a basis for tolling the statute existed,
17 petitioner's last day to file his federal habeas petition was December 12, 2005. See
18 Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001).

19    The burden of demonstrating that the AEDPA's one-year limitation period was
20 sufficiently tolled, whether statutorily or equitably, rests with the petitioner. See, e.g.,
21 Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005);
22 Banjo v. Ayers, 614 F.3d 964, 967 (9th Cir. 2010); Gaston v. Palmer, 417 F.3d 1030,
23 1034 (9th Cir. 2005), modified on other grounds, 447 F.3d 1165 (2006), cert. denied,
24 549 U.S. 1134 (2007); Smith v. Duncan, 297 F.3d 809, 814 (9th Cir. 2002); Miranda
25 v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002). For the reasons discussed in the next
26 two Sections, the Court finds and concludes that petitioner has not met his burden
27 with respect to the tolling issue.
28 //

B. **Petitioner has not met his burden of demonstrating that statutory tolling rendered the filing of the Petition herein timely.**

28 U.S.C. § 2244(d)(2) provides:

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

Here, the Court finds that petitioner has not met his burden of establishing entitlement to any statutory tolling of the limitation period under 28 U.S.C. § 2244(d)(2) because, by the time petitioner constructively filed the first of his state post-conviction petitions on or about June 14, 2013, the limitation period already had run 7-1/2 years earlier and could not be reinitiated. See, e.g., Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir.) (holding that § 2244(d) "does not permit the reinitiation of the limitations period that has ended before the state petition was filed," even if the state petition was timely filed), cert. denied, 540 U.S. 924 (2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001); Wixom v. Washington, 264 F.3d 894, 898-99 (9th Cir. 2001), cert. denied, 534 U.S. 1143 (2002).

C. **Petitioner has not met his burden of demonstrating entitlement to any equitable tolling of the limitation period.**

In Holland v. Florida, - U.S. -, 130 S. Ct. 2549, 2562, 177 L. Ed. 2d 130 (2010), the Supreme Court held that the AEDPA's one-year limitation period also is subject to equitable tolling in appropriate cases. However, in order to be entitled to equitable tolling, the petitioner must show both that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented his timely filing. See Holland, 130 S. Ct. at 2562 (quoting Pace, 544 U.S. at 418). The Ninth Circuit has held that the Pace standard is consistent with the Ninth

Circuit's "sparing application of the doctrine of equitable tolling." See Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 (9th Cir.), cert. denied, 130 S. Ct. 244 (2009).

Thus, in order to be entitled to equitable tolling of the limitation period, "[t]he petitioner must show that 'the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time.'" Porter, 620 F.3d at 959 (quoting Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009)). "[T]he threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule." Miranda, 292 F.3d at 1066. Consequently, as the Ninth Circuit has recognized, equitable tolling will be justified in few cases. See Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003) (as amended); see also Waldron-Ramsey, 556 F.3d at 1011 ("To apply the doctrine in 'extraordinary circumstances' necessarily suggests the doctrine's rarity, and the requirement that extraordinary circumstances 'stood in his way' suggests that an external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part, all of which would preclude the application of equitable tolling.'").

Here, petitioner did not file opposition to the Motion to Dismiss, let alone purport to make the requisite showings for equitable tolling. Although petitioner did aver in his declaration supporting the Petition that he is "an uneducated layman," with a below fifth grade reading level and a below average IQ, and that he has no knowledge of California law and procedures, the law is well established that neither ignorance of the law nor the lack of legal assistance constitutes an "extraordinary circumstance" entitling a habeas petitioner to any equitable tolling of the limitation period. See, e.g., Rasberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) (holding that "a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling" of the AEDPA limitations period); Turner v. Johnson, 177 F.3d 390, 391 (5th Cir.) (per curiam), cert. denied, 528 U.S. 1007

1  (1999) (lack of familiarity with legal process, "due to illiteracy or any other reason[,]" does not merit equitable tolling of AEDPA limitations period); Gazzeny v. Yates, 2009 WL 294199, at *6 (C.D. Cal. Feb. 4, 2009) (noting that "[a] prisoner's illiteracy or ignorance of the law do not constitute extraordinary circumstances" for purposes of tolling of the AEDPA statute of limitations); Barnett v. Knowles, 2006 WL 824474, at *5 (N.D. Cal. Mar. 29, 2006) (illiteracy and pro se status are not ordinarily extraordinary circumstances or external factors that may excuse failure to comply with federal habeas procedures); Singletary v. Newland, 2001 WL 1220738, at *2 (N.D. Cal. Sept. 28, 2001) ("A misunderstanding of the complexities of federal habeas relief is not considered an extraordinary circumstance or external factor for purposes of avoiding an otherwise valid dismissal, as complete illiteracy does not even provide a sufficient basis for equitable tolling."); Ekenberg v. Lewis, 1999 WL 13720, at *2 (N.D. Cal. Jan. 12, 1999) ("Ignorance of the law and lack of legal assistance do not constitute such extraordinary circumstances."); Bolds v. Newland, 1997 WL 732529, at *2 (N.D. Cal. Nov. 12, 1997) ("Ignorance of the law and lack of legal assistance do not constitute such extraordinary circumstances."); see also Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir. 1991) (holding that neither "lack of knowledge of applicable filing deadlines," nor "unfamiliarity with the legal process," nor "lack of representation during the applicable filing period," nor "illiteracy," provides a basis for equitable tolling); cf. Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (holding pre-AEDPA that pro se habeas petitioner's illiteracy and lack of legal assistance were not sufficient "cause" to excuse his failure to file a state collateral challenge in a timely manner).

The Court therefore finds that petitioner has not met his burden of demonstrating entitlement to any equitable tolling of the limitation period.

//
//
//

D. **Petitioner has not made a sufficient showing for application of the "actual innocence" exception to the AEDPA statute of limitations.**

In McQuiggin v. Perkins, - U.S.-, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the Supreme Court ruled that a "convincing showing" of actual innocence under Schlup v. Delo, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) can overcome the AEDPA statute of limitations.

1. The "actual innocence" standard

In Schlup, the Supreme Court held that, for the "fundamental miscarriage of justice" exception to apply, the petitioner must show that a constitutional violation probably has caused the conviction of one who is actually innocent of the crime. See Schlup, 513 U.S. at 324. Under Schlup, petitioner must establish his factual innocence of the crime, and not mere legal insufficiency. See Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998); Jaramillo v. Stewart, 340 F.3d 877, 882-83 (9th Cir. 2003). The Supreme Court further held in Schlup that, "[t]o be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." Schlup, 513 U.S. at 324. Further, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Id. at 327.

The Supreme Court has stressed that the exception is limited to "certain exceptional cases involving a compelling claim of actual innocence." House v. Bell, 547 U.S. 518, 521, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006); see also Schlup, 513 U.S. at 324 (noting that "experience has taught us that a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare"). Moreover, the Ninth Circuit has noted that, because of "the rarity of such evidence, in virtually every case, the allegation of actual innocence has been

summarily rejected." Shumway v. Payne, 223 F.3d 982, 990 (9th Cir. 2000) (citing Calderon v. Thomas, 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998)).[3]

In reviewing a Schlup actual innocence claim, the Court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." Schlup, 513 U.S. at 331-32. As explained by the Supreme Court in Schlup, this is a "probabilistic determination about what reasonable, properly instructed jurors would do." Id. at 329. Further, "[i]n assessing the adequacy of petitioner's showing, . . . the district court is not bound by the rules of admissibility that would govern at trial." See Schlup, 513 U.S. at 327; see also House, 547 U.S. at 537-38 ("the habeas court must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial" (internal quotation marks omitted)). Accordingly, as described by Judge Kozinski in his dissenting opinion in Carriger v. Stewart, 132 F.3d 463, 485-86 (9th Cir. 1997) (en banc), cert. denied, 523 U.S. 1133 (1998), in evaluating a claim of actual innocence, a habeas court is required to posit a hypothetical jury that is entitled to consider both admissible and inadmissible evidence, so long as the inadmissible evidence is

---

[3] In the few cases the Court has located in which a federal habeas petitioner has been able to meet the Schlup standard, the "new evidence" consisted of credible evidence that the petitioner had a solid alibi for the time of the crime, numerous exonerating eyewitness accounts of the crime, DNA evidence excluding the petitioner and identifying another potential perpetrator, a credible confession by a likely suspect explaining that he had framed the petitioner, and/or evidence contradicting the very premise of the prosecutor's case against the petitioner. See, e.g., House, 547 U.S. at 521, 528-29, 540, 548-54; Larsen v. Soto, 742 F.3d 1083, 1089-91 (9th Cir. 2013); Souter v. Jones, 395 F.3d 577, 581-84, 591-92, 596 (6th Cir. 2005); Carriger v. Stewart, 132 F.3d 463, 465, 471, 478 (9th Cir. 1997), cert. denied, 523 U.S. 1133 (1998); Lisker v. Knowles, 463 F. Supp. 2d 1008, 1018-28 (C.D. Cal. 2006); Garcia v. Portuondo, 334 F. Supp. 2d 446, 455-56 (S.D.N.Y. 2004); Schlup v. Delo, 912 F. Supp. 448, 451-55 (E.D. Mo. 1995).

reliable.

In <u>Majoy v. Roe</u>, 296 F.3d 770, 775 (9th Cir. 2002), the Ninth Circuit reversed a district court's dismissal of a habeas petition for untimeliness and remanded the matter for an evidentiary hearing where it appeared that the petitioner might be able "to muster a plausible factual case meeting the exacting gateway standard established by the Supreme Court in <u>Schlup</u> for overriding a petitioner's clear failure to meet deadlines and requirements for filing a timely petition in federal court." However, the Court does not construe <u>Majoy</u> as either (a) mandating that the district court hold an evidentiary hearing whenever a habeas petitioner just proffers "new evidence," which, if found credible, would make it "more likely than not that no reasonable juror would have convicted him," or (b) precluding the district court from reaching the conclusion, without conducting an evidentiary hearing, that the "new evidence" being proffered by the petitioner does not qualify as new *reliable* evidence for purposes of meeting the <u>Schlup</u> standard. If <u>Majoy</u> were so construed, the Court in essence would be applying the same standard that is applied in deciding a summary judgment motion. See, e.g., <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial"). However, the Supreme Court expressly held in <u>Schlup</u> that the summary judgment standard is not the standard to be applied in determining whether to conduct an evidentiary hearing on a habeas petitioner's claim of actual innocence. "Instead, the court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." See <u>Schlup</u>, 513 U.S. at 331-32; <u>House</u>, 547 U.S. at 537. Thus, the Supreme Court clearly has contemplated that, in some instances, the determination of reliability can be made without the district court having to conduct an evidentiary hearing.

//

2.  Petitioner's "actual innocence" claim here

The gravamen of petitioner's actual innocence claim is that, under established California law, a person cannot be guilty of elder abuse based on failure to prevent abuse, unless the person had either care and custody of the victim or a legal duty to control the conduct of the perpetrator of the abuse. Petitioner maintains that he did not have care and custody of the victims here or a legal duty to control the conduct of his co-defendant who was the perpetrator of the abuse, Roberta Johnson.

The evidence adduced by petitioner in support of his actual innocence claim consists of his declaration and his daughter's declaration.

In his declaration, petitioner avers that he and his daughter had informed his counsel that he lived with her, his wife, and his grandson; that his relationship with co-defendant Johnson was "casual at best"; that he "knew little to nothing of [the victims'] health problems or of any serious or urgent health problems that needed immediate care"; and that he only saw Johnson "on very rare occasion, because [he] was married." Petitioner further avers:

> "On the Saturday I arrived at Miss Johnson's and the victim's resident [sic] to take her to the grocery store, which I did from time to time, Mr. Parris Bland, Eric, and William was all up and about. It was unfortunate for me my truck was having some small problem late Saturday evening when I arrived. After I fixed the problem, it was to [sic] late to go to the store and I stayed the night so I could take Miss Johnson to the store in the morning; but that morning Mr. Parris, as he was waking his sons up, found Eric had died."

In her declaration, petitioner's daughter Jamie avers that her father was living with her, her son, and her mother when he was arrested on March 13, 2003. She also avers, "It was unfortunate that my father was at Delores Johnson's resident [sic] when her brother was found dead but my father did and have always lived with my son, my

mother, and me when the death occurred."

### 3. Whether petitioner has met his burden under Schlup

As a preliminary matter, the Court notes that the Schlup actual innocence standard does not readily lend itself to a situation like this, when the petitioner pleaded guilty. Since there was no trial, the Court cannot "assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial."

In Bousley v. United States, 523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998), the Supreme Court held in part that a defendant who had entered a guilty plea could overcome a procedural default of a claim based upon a showing of actual innocence satisfying the Schlup standard. There, the petitioner had pled guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1). He later challenged on habeas for lack of a factual basis for the plea. Five years after his plea, while his appeal from the district judge's denial of habeas relief was pending, the Supreme Court held in another case that § 924(c)(1)'s "use" prong requires the Government to show "active employment of the firearm." In light of this new case, the petitioner in Bousley argued that his plea was involuntary because he was misinformed about the elements of a § 924(c)(1) offense. Although the Supreme Court held that the petitioner had procedurally defaulted his constitutional claim, it concluded in light of the new case that the district court should have permitted the petitioner to attempt to make a showing of actual innocence to overcome that default. See Bousley, 523 U.S. at 621, 623-24; see also Vosgien v. Persson, 742 F.3d 1131, 1136 (9th Cir. 2014) (applying Schlup standard where the habeas petitioner was basing his actual innocence claim on subsequent case law).

Here, petitioner is not basing his actual innocence claim on new case law that post-dates his guilty plea. Indeed, the California Supreme Court case on which he is relying in support of his actual innocence claim, People v. Heitzman, 9 Cal. 4th 189,

13

37 Cal. Rptr. 2d 236, 886 P.2d 1229 (1994), predated his guilty plea by ten years. Further, following the preliminary hearing and over a year prior to his guilty plea, petitioner made a motion to set aside the information charging him with elder abuse based on Heitzman and the same legal argument he now is making in support of his actual innocence claim. Thus, it is unclear to the Court that the Schlup actual innocence gateway even is available to petitioner here. See Smith v. Baldwin, 510 F.3d 1127, 1140-46, (9th Cir. 2007) (Without determining whether the Schlup actual innocence gateway always applies to federal habeas petitioners who plead guilty (or no contest), the Ninth Circuit applied the Schlup standard to a petitioner who had entered a no contest plea and concluded that he had not met his burden.), cert. denied, 555 U.S. 830 (2008); Valdez v. McEwen, 2012 WL 5373376, at *4 (C.D. Cal. Aug. 24, 2012 (noting that it is not clear that the Schlup actual innocence gateway applies where a habeas petitioner entered a guilty plea), Report and Recommendation Adopted by 2012 WL 5373368 (C.D. Cal. Oct. 31, 2012).

In any event, the Court finds petitioner has not even come close to meeting his burden under Schlup. The averments in petitioner's declaration are not creditworthy because they are completely belied by petitioner's inculpatory admissions during his police interview. Petitioner admitted to the police that he was Johnson's live-in boyfriend; that he spent most of his time with her and only went home occasionally to see his wife and daughter; that he was involved in the feeding and care of the victims; that he was aware that Johnson was not providing the victims with enough food and knew this was wrong; that one of the victims would even beg him for more food, but petitioner acquiesced to Johnson's instruction not to feed the victims any more; that petitioner was aware Johnson was using the victims' money to buy rock cocaine, which petitioner admitted sometimes smoking with her; and that to prevent the victims from going into the kitchen at night for food, he nailed a board to the door to the victims' room that kept them inside.

//

Based on petitioner's admissions to the police that he was Johnson's live-in boyfriend and that he spent most of his time with her and only went home occasionally to see his wife and daughter, the averment by petitioner's daughter that petitioner was living with her, her son, and her mother when the offenses occurred also is not creditworthy. The daughter's averment further is belied by petitioner's statements to the police that his wife and daughter knew that he was staying at Johnson's house and that, the day before, his daughter had called there to speak with him.

Two other considerations also militate against finding that petitioner has met his burden under Schlup. First, although petitioner made a motion to set aside the information charging him with elder abuse based on Heitzman and the same legal argument he now is making in support of his actual innocence claim over a year prior to his guilty plea, the first time petitioner raised his actual innocence claim in the state courts was over eight years after his guilty plea. Moreover, the Court concurs with the Superior Court that petitioner has not established good cause or justification for his delay in seeking state collateral relief. See McQuiggin, 133 S. Ct. at 1928 ("[A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.").

Second, over a year after he made a motion to set aside the information charging him with elder abuse based on Heitzman and the same legal argument he now is making in support of his actual innocence claim, petitioner admitted that he was guilty of the charged elder abuse offenses under oath in his written plea agreement and he then pleaded guilty to the charges in open court.[4] In one of the

---

[4] Although petitioner attached as an exhibit to the Petition a copy of the sentencing hearing transcript, he did not attach a copy of the transcript of the plea
(continued...)

paragraphs initialed by petitioner on the plea agreement form, petitioner represented that he was freely and voluntarily entering the guilty plea because he was guilty (and for no other reason); and in another of the paragraphs initialed by petitioner, he represented that no one had used any force or violence or threats or menace or duress or undue influence of any kind on him or anyone dear to him to get him to plead guilty. Since petitioner's contention that he was unaware, at the time he pleaded guilty, of the legal theory now underlying his actual innocence claim is completely belied by the motion to set aside the information filed by him over a year earlier, the Court finds that petitioner has failed to rebut the presumed verity of the statements in the plea agreement form and his admissions of guilt. See Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977) (observing that "[s]olemn declarations in open court carry a strong presumption of verity," and that "[t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible"); see also Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986) ("In assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weight.").

Finally, the Court finds that it does not need to conduct an evidentiary hearing in order to make the determination that petitioner has not even come close to meeting his burden under Schlup. See Gandarela v. Johnson, 286 F.3d 1080, 1086-87 (9th Cir. 2001) (holding that, because the affidavits proffered by the petitioner in support of his actual innocence claim "speak for themselves" and petitioner "failed to show what more an evidentiary hearing might reveal of material import on his assertion of actual innocence," the district court had not abused its discretion in finding that an

---

[4](...continued)
hearing that it appears from the sentencing hearing transcript took place a couple of weeks earlier.

evidentiary hearing was unnecessary), cert. denied, 537 U.S. 1117 (2003); Van Buskirk v. Baldwin, 265 F.3d 1080, 1084-85 (9th Cir. 2001) (affirming the district court's rejection, without conducting an evidentiary hearing, of the petitioner's actual innocence claim, where the petitioner's "new evidence" consisted of the opinion of a psychologist that petitioner was insane or emotionally disturbed at the time of the crime), cert. denied, 535 U.S. 950 (2002); Shumway v. Payne, 223 F.3d 982, 989-90 (9th Cir. 2000) (holding, without remanding for an evidentiary hearing, that new evidence in the form of psychologist's opinion supporting the petitioner's contention that she lacked the capacity to form the intent to murder was insufficient to demonstrate that the petitioner qualified for the actual innocence exception).

**CONCLUSION AND ORDER**

In conclusion, the Court finds that, when the Petition herein was constructively filed on September 2, 2014, it was untimely by over 8-1/2 years.

IT THEREFORE IS ORDERED that respondent's Motion to Dismiss is granted and that Judgment be entered dismissing this action with prejudice.

DATED: January 21, 2015

ROBERT N. BLOCK
UNITED STATES MAGISTRATE JUDGE